IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STEVE PRUITT and DEBRA PRUITT,     §
                                   §
            Plaintiffs,            §
                                   §
V.                                 §          No. 3:15-cv-2359-L
                                   §
THE BANK OF NEW YORK MELLON,       §
                                   §
            Defendant.             §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

Defendant Bank of New York Mellon ("Defendant" or the "Bank") has filed a

Motion for Summary Judgment. *See* Dkt. No. 14. United States District Judge Sam A.

Lindsay has referred the motion to the undersigned United States Magistrate Judge.

*See* Dkt. No. 17. Although Plaintiffs Steve and Debra Pruitt (collectively, "the Pruitts"

or "Plaintiffs") have not filed a response and their time do to so has passed, *see* N.D.

TEX. L. CIV. R. 7.1(e), Defendant nevertheless filed a reply, *see* Dkt. No. 18.

The undersigned now concludes that Defendant's Motion for Summary

Judgment [Dkt. No. 14] should be granted in part and denied in part.

### Background

When all facts are viewed in the light most favorable to the Pruitts as the

nonmoving parties, the summary judgment evidence shows the following for purposes

of resolving the Bank's Motion for Summary Judgment [Dkt. No. 14].

On July 16, 2004, Steve Pruitt signed a promissory note ("Note") to finance the

purchase of a home in Rowlett, Texas ("the Property"). The Note was secured by a Deed

of Trust in which Steve Pruitt and his wife Debra Pruitt pledged their interest in the Property as security (the "Note" and "Deed of Trust" and, collectively, the "Loan").

In late June 2011, the Bank became the owner and holder of the Loan. The Bank was thus entitled to periodic payments in accordance with the applicable terms of the Loan. The Pruitts stopped making payments on the Loan in October 2013 and have not made a payment since.

RCS became the Loan's servicer on March 16, 2014. RCS representatives called Steve Pruitt forty times to discuss the status of the Loan. On one occasion, a man purporting to be Steve Pruitt's son agreed to pass along a message requesting a return call. RCS representatives left a voice message requesting a return call on each of the other thirty-nine times RCS called. The Pruitts never responded to these phone calls.

The Bank subsequently initiated foreclosure proceedings. On the morning of January 6, 2015, the Bank purchased the Property at a foreclosure sale.

Steve Pruitt filed an individual bankruptcy petition under Chapter 13 on the same day. The proceeding would be converted to a bankruptcy under Chapter 7 on February 11, 2015. Steve "Pruitt's Chapter 7 case has now been fully administered with [Steve] Pruitt receiving a discharge in bankruptcy." Dkt. No. 15 at 6. The Bank observes that it foreclosed on the Property hours before Steve Pruitt filed the bankruptcy petition. This would mean that the Property was not a part of the bankruptcy estate. The Bank nevertheless obtained an order from the Bankruptcy Court permitting it to evict Steve Pruitt and all other occupants.

-2-

The Bank sent certified letters on January 14, 2015 and May 12, 2015 to the occupants of the Property providing them written notice to vacate. Debra Pruitt confirmed receipt of the May 12, 2015 letter.

Two weeks later, "the Bank filed a forcible entry and detainer proceeding to gain possession of the Property." *Id.* at 4. The Justice of the Peace to the office of Constable Ray Nichols issued a citation "for service with the petition upon the Plaintiffs and all occupants." *Id.* The Constable's Deputy tried to personally serve the Pruitts on two occasions. He was unsuccessful each time. With the blessing of the presiding Justice of the Peace, "[o]n May 29, 2015, the Constable's Deputy physically posted a copy of the citation and petition to the front door of the Property and mailed a copy to Plaintiffs at the Property's address." *Id.*

The Pruitts "w[ere] not personally served and [did not] actually receive[] the notice to appear" until hours after the hearing had concluded. Dkt. No. 1-3 at 3.

The court entered a judgment against the Pruitts after they failed to appear at the June 8, 2015 hearing. Plaintiffs were issued a Writ of Possession for the Property shortly thereafter.

On June 29, 2015, the Pruitts initiated this lawsuit by filing "Plaintiff's Original Petition, Application for Injunctive Relief and Request for Disclosures" in State Court (the "State Court Petition"). The Pruitts' State Court Petition is accompanied by a notarized affidavit confirming that Debra Pruitt "reviewed the attached Original Petition" to confirm that "the facts and allegations contained therein are true and correct as stated." *See* Dkt. No. 1-3.

In their State Court Petition, the Pruitts assert claims for breach of contract, fraud, and breach of duty to deal in good faith. *Id.* at 3-4. These claims appear to be largely based on the Pruitts' allegation that, after "they entered into debt restructuring negotiations with [the Bank]," the Bank told them "they were not allowed to make any payments" and that the Bank "would not take any action to foreclose on the Property." *Id.* at 2-3. They also allege that the Bank "added exorbitant fees and charges to the loan" that "exceed those permitted under the security interest and note" and "failed to give [them] an accurate accounting," thereby "prevent[ing] [them] from successfully modifying the loan." *Id.* at 4. According to the Pruitts, "the failure to justify and verify these charges renders the notice [the Bank provided about the decision to foreclose on the home] insufficient." *Id.*

"At no time in the bankruptcy case did [Steve] Pruitt ever disclose the existence of his claims in this action or the pendency of this suit as part of his required asset disclosures." Dkt. No. 15 at 6.

The Bank proffers evidence indicating that, from March 16, 2014 and onward, "RCS has had no conversation with [the Pruitts]" and that "[t]he Loan was not in the process of modification or loss mitigation at any time while RCS serviced the Loan." Dkt. No. 16-1 at Appx. 1. The Bank has not identified evidence that attempts to dispute the Pruitts' allegations concerning the Bank's billing practices.

"[T]he Bank evicted the Pruitts, obtained possession of the Property, and executed a contract for sale of the Property to a third party" on August 28, 2015. Dkt. No. 15 at 5. The sale of the Property closed in October 2015.

-4-

The Bank has since filed this Motion for Summary Judgment, in which it argues that it is entitled by law to judgment on the Pruitts' claims for breach of contract, common law fraud, and breach of duty to deal in good faith. *See* Dkt. No. 14.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City*

*of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "after the nonmovant has been given an opportunity to raise a genuine factual issue," "the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005); *Steadman v. Texas Rangers*, 179 F.3d 360, 366 (5th Cir. 1999).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the

part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

The Pruitts have not responded to the Bank's motion for summary judgment. Their failure to respond does not permit the Court to enter a "default" summary judgment. *See Tutton v. Garland Indep. Sch. Dist.*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990). But their failure to respond does mean that they have not designated specific facts showing there is a genuine issue for trial on any of their claims. *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)).

Instead, a summary judgment nonmovant who does not respond to the motion is relegated to her pleadings. *Id.* Unsworn pleadings do not constitute summary judgment evidence. *Id.* But "[a] verified complaint can be considered summary judgment evidence" at least to the extent such pleadings comport with the federal rules on summary judgment. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995) (citing *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994)).

Here, the Pruitts' State Court Petition is accompanied by a notarized affidavit confirming that Debra Pruitt "reviewed the attached Original Petition" to confirm that "the facts and allegations contained therein are true and correct as stated." *See* Dkt. No. 1-3. The Pruitts' State Court Petition is thus verified and can be used as evidence in this motion. *Cf. Mirant Corp. v. F.E.R.C.*, No. 4:03-cv-1174-A, 2014 WL 212997, at

*2 n.2 (N.D. Tex. Jan. 26, 2004) (finding that a complaint was not "'verified' in any legal sense [since] [i]t [was] not accompanied or supported by an affidavit or a declaration").

## Analysis

In their State Court Petition, the Pruitts bring claims for breach of contract, fraud, and breach of duty to deal in good faith. The Bank insists that they are entitled to judgment as a matter of law on all three claims based on the undisputed facts. The undersigned addresses the viability of each of these claims below.

I.    Steve Pruitt is judicially estopped from filing this lawsuit.

The Bank contends that summary judgment is appropriate on these claims with respect to Steve Pruitt because he "failed to include any claim asserted in this Lawsuit as an asset in his Bankruptcy disclosures." Dkt. No. 15 at 13. The Bank does not ask the Court to judicially estop Debra Pruitt from bringing this suit. *See id.* (arguing only that "Pruitt has Abandoned His Claims through His Bankruptcy").

Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999). "A court should apply judicial estoppel if (1) the position of the party against which estoppel is sought is plainly inconsistent with its prior legal position; (2) the party against which estoppel is sought convinced a court to accept the prior position; and (3) the party did not act inadvertently." *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

Each of these elements is satisfied here. First, Steve Pruitt has taken an inconsistent position by failing to disclose this lawsuit in his bankruptcy proceeding. Steve Pruitt initially filed his bankruptcy petition under Chapter 13 on January 6, 2015, which was converted to a bankruptcy under Chapter 7 on February 11, 2015. As a Chapter 7 debtor, he had an obligation to disclose the existence of any legal claims that "the debtor could have raised ... as of the commencement of the [bankruptcy proceeding]." *Matter of Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994) (explaining that "[w]hether a particular ... cause of action belongs to the estate depends upon whether ... the debtor could have raised the claim as of the commencement of the case"). This is an ongoing obligation. *See Sims v. Big Lots Stores, Inc.*, No. 4:06CV27LN, 2006 WL 2805137, at *6 (S.D. Miss Sept. 28, 2006). Each of Steve Pruitts' claims accrued, at the latest, by the date of the foreclosure sale. *See* Dkt. No. 1-3 at 3. Steve Pruitt did not file for bankruptcy until hours after the actual foreclosure sale started. In short, Steve Pruitt should have disclosed this lawsuit during the bankruptcy proceeding. His failure to do so constitutes an inconsistent position.

Second, Steve Pruitt convinced the bankruptcy court to accept his position that he did not have any potential claims outstanding. The bankruptcy court relied on Steve Pruitt's disclosure of his assets to determine the bankruptcy estate and to ultimately grant discharge.

Third, Steve Pruitt did not act "inadvertently" when he failed to disclose the pending claim. A failure to disclose will be found to be inadvertent if the party that

may be estopped "did not know of the inconsistent position or ... had no motive to conceal it from the court." *Jethroe*, 412 F.3d at 601. Courts infer that a party knows of the inconsistent position if he "was []aware of the facts giving rise to them." *Id.* Whether the party "was []aware that she had a duty to disclose her claims" is irrelevant. *Id.* Steve Pruitt was surely aware of the facts giving rise to these claims during the bankruptcy since he filed this action while the bankruptcy proceeding was still pending. He also had a motive to conceal this action in his bankruptcy proceeding. As the Fifth Circuit has noted:

> [T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from the nondisclosure.

*Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). This logic applies here as well. Steve Pruitt "stood to 'reap a windfall' had [he] been able to recover on the undisclosed claim without having disclosed it to the creditors." *See id.* (quoting *Superior Crewboats, Inc. v. Primary P & I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 336 (5th Cir. 2004)).

Summary judgment is thus appropriate for all three claims as brought by Steve Pruitt. Since the Bank does not attempt to judicially estop Debra Pruitt from bringing this suit, the undersigned will next address the viability of each of her three claims.

II.    <u>Summary judgment should be denied as to Debra Pruitt's contract claim.</u>

The Bank argues that the Pruitts' breach of contract claim necessarily fails because: (1) Debra Pruitt is not a party to the Loan; (2) "there are no facts alleged

which would support a finding that the Bank breached the contract ... and no damages alleged from such unidentified breach"; and (3) the uncontradicted evidence shows that the Pruitts failed to establish performance of the contract. Dkt. No. 15 at 7-8.

The Bank first argues that Debra Pruitt does not have standing to assert this claim because she "was not a party to the Loan and did not have any contract with the Lender." Dkt. No. 15 at 2. The Bank's assertion is not entirely correct. Debra Pruitt did not sign the Note used to finance the purchase of the Property. But, as the Pruitts state in their verified State Court Petition, both "Plaintiffs executed [the] Deed of Trust." Dkt. No. 1-3 at 2.

An individual does not have standing to bring a breach of contract claim if she is not a party or third party beneficiary to either the Note or Deed of Trust. *See Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 575 (S.D. Tex. 2012) (finding that "Kipler has no viable breach of contract against Defendants because he is not a party to the Note, Deed of Trust or Loan Modification agreement").

But this is not the case where the plaintiff is a party to at least one of these agreements. In *Williams v. U.S. Bank Nat'l Ass'n*, No. 3:13-cv-439, 2014 WL 847012, at *7 (S.D. Miss. March 4, 2014), the court found that the plaintiff had standing to bring breach of contract claims based on nearly identical facts. The court observed that "Defendants are correct that [the plaintiff] was not a party to the note, but they overlook the fact that [she] was a party to the Deed of Trust." *Id.* at *7. That court also noted that the plaintiff "claims that Defendants breached paragraph 22 of the Deed of Trust by, among other things, failing to provide the required notice of acceleration." *Id.*

As such, the Court denied the defendants' motion to dismiss as to the plaintiff's breach of contract claims. *Id.*

The same is true here. The Deed of Trust – which was executed on the same day as the Note and used to secure the Note – identifies "Steve Pruitt, and Debra A. Pruitt" as the "Borrower[s]" and lays out the several obligations that they have to the Lender and vice-versa. *See* Dkt. No. 16-3 at Appx. 7-18. This includes, for instance, a term making the Pruitts jointly and severally liable upon default of the Note. As the Deed explains, "any Borrower who co-signs this Security Instrument but does not execute the Note (a 'co-signer')" agrees to "mortgage, grant and convey the co-signer's interest in the Property under the terms of the this Security Instrument." *Id.* at Appx. 14. Further, like the plaintiff in *Williams*, the Pruitts allege that the Bank breached terms of the Note as well as the Deed of Trust. In their verified State Court Petition, the Pruitts specifically state that "Defendant has added numerous exorbitant fees and charges to the loan" that "exceed those permitted under the security interest and note." Dkt. No. 1-3 at 4.

Debra Pruitt thus had standing to bring this breach of contract claim.

As to the Bank's attack on the adequacy of the Pruitts' pleadings, the Fifth Circuit has observed that "in many cases, the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992). The Fifth Circuit has thus found that when a "motion for summary judgment only challeng[es] the sufficiency of the plaintiffs' pleadings, the motion should [be] evaluated much the same as a 12(b)(6) motion to

dismiss." *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993). "[B]oth standards 'reduce to the same question:' whether "if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless failed to state a claim." *Id.*

The Bank argues that the Pruitts "have failed to state a claim for breach of contract based on the notice provided of the foreclosure sale." Dkt. No. 15 at 8.

The undersigned agrees with the Bank – at least to the extent that the Pruitts' breach of contract claim is based on this specific allegation. The Pruitts allege that the Bank failed to provide them with a proper accounting of the loan thereby "render[ing] the notice of acceleration insufficient." Dkt. No. 1-3 at 4. As part of their application for a temporary restraining order, they also allege that they "never received proper notice of the [corresponding] eviction trial pursuant to Rule 510.4(b) of the Texas Rules of Civil Procedure." *Id.* at 6. But at no point do the Pruitts plead that a specific term of either the Note or the Deed of Trust actually requires the Bank to provide them notice of foreclosure at all. The Pruitts can only state a breach of contract claim if they allege that an actual term of the contract has been breached.

But the Bank is wrong to conclude that their failure to state a breach of contract claim under this theory means the Pruitts have not stated any claim for breach of contract. The Pruitts allege facts supporting at least two other theories of breach. One theory is that "[the Bank] has added numerous exorbitant fees and charges to the loan" that "exceed those permitted under the security interest and note." Dkt. 1-3 at 4. The Bank does not appear to challenge the sufficiency of these allegations.

-14-

Another theory is that the Bank prevented the Pruitts from complying with the terms of the Loan. The Pruitts specifically allege that "Defendant's representatives informed Plaintiffs that they were not allowed to make any payments" and that the Bank "would not take any action to foreclose on the Property" while loan modification negotiations were pending. *See id.* at 3-4. This allegation gives rise to a potential breach of contract claim based on the theory of wrongful interference. This theory provides that a contracting party who wrongly "prevents the other party's performance of a contract ... has committed a breach." *See Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 629-30 (N.D. Tex. 2010) (citing *Longview Const. & Dev., Inc. v. Loggins Const. Co.*, 523 S.W.2d 771, 779 (Tex.Civ.App.-Tyler 1975, writ dism'd by agr.)).

As part of the Bank's argument that it is entitled to summary judgment on the Pruitt's claim for common law fraud, it alleges that the allegations underlying this claim are not specific enough to meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *See* FED. R. CIV. P. 9(b). But courts have refused to apply the pleading standard in Rule 9(b) to breach of contract claims – even when the claim is based on a misrepresentation. *See Chau v. Aviva Life and Annuity Co.*, No. 3:09-cv-2305-B, 2011 WL 1990446, at *6 (N.D. Tex. May 20, 2011) (observing that courts in the Fifth Circuit "apply[] Rule 9(b) to ... fraud claim[s]" and "decline[] to apply Rule 9(b) to ... breach of contract claim[s] even [when] plaintiffs allege[] that the breach was based on [various misrepresentations]") (citing *Flores v. ASI Computer Technologies, Inc.*, Civ. A. No. L-06-cv-135, 2007 WL 2900567 (S.D. Tex. Sept. 28, 2007) and *Hannover Life Reassurance Co. of Am. v. Baker, Lowe, Fox Ins. Mktg., Inc.*, No. 3:01-cv-

597-D, 2001 WL 1586874, at *3-*5, *6-*7 (N.D. Tex. Dec. 10, 2001)). This is likely because a plaintiff can succeed on a breach of contract claim without establishing that the defendant acted fraudulently or intentionally. *See Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 369 (5th Cir. 2001) (finding claims for violation of 15 U.S.C. Sec. 77k where the defendant "made untrue statements of material facts and omitted to state material facts ... do not 'sound in fraud' and cannot be dismissed for failure to satisfy Rule 9(b)").

The Bank also argues that the Pruitts have failed to state a breach of contract claim because they have not alleged any damages that stem from the breach. But the Pruitts are not required to allege any specific damages. "[U]nder Texas law a plaintiff's failure to prove actual damages stemming from a breach of contract does not prevent recovery on a contract theory; nominal damages may still be obtained upon proof that a contract was formed and breach." *Southwest Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-cv-891-B, 2007 WL 4823761, at *10 (N.D. Tex. Sept. 12, 2007).

Summary judgment is thus not appropriate to the extent it is based on the arguments that the Pruitts have not alleged a breach.

Finally, the undersigned addresses the Bank's argument that summary judgment is warranted because the Pruitts cannot show performance of the contract.

To prevail in a breach of contract claim in Texas, plaintiffs must establish that they performed under the contract. *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Courts routinely find that a party who has defaulted on his or her mortgage first generally cannot bring a breach of contract claim even if the

lender subsequently breached the contract. *See, e.g., Kaechler v. Bank of Am.*, Civ. A. No. H-12-423 2013 WL 127555 at *3 (S.D. Tex. Jan. 9, 2013); *Hill v. Wells Fargo Bank, N.A.*, Civ. A. No. V-12-11, 2012 WL 2065377, at *4 (S.D. Tex. June 6, 2012); *Mitchell v. Chase Home Fin. LLC*, No. 3:06-cv-2009-K, 2008 WL 623395, at *4 (N.D. Tex. Mar. 4, 2008).

Here, the Bank has established that the Pruitts stopped making payments on the Loan in October 2013. The burden thus shifts to the Pruitts to show that performance under the contract is a genuine issue of material fact. *See Narvaez*, 757 F. Supp. 2d at 629 (shifting the burden to the plaintiff after the defendant established that Plaintiff did "not mak[e] all required payments due under the note").

The Pruitts have alleged facts suggesting that their non-performance is excused. They allege that the Bank instructed them not to make payments on the Loan and assured them that it would not foreclose on the Property while a loan modification request was pending. If true, the Pruitts' failure to pay the Loan may excuse a failure to perform under the contract. "Under Texas law, when one party's wrongful interference prevents the other party's performance of a contract, not only is the other party's performance excused, but the interfering party has committed a breach of contract for which the other party may recover damages sustained from the breach." *Id.* at 629-30.

The Bank urges the Court to discount these allegations. It argues that the undisputed evidence shows that "it has had no communications with the Pruitts other than demands for payment, notices to evict, and phone messages, and has made no

false statements to [them]" – and in particular, that it has had no communications with the Pruitts "regarding a request to modify the loan." *Id.* at 8, 12.

The Bank's arguments fail for two reasons. First, Debra Pruitt has verified the Pruitts' State Court Petition by affirming its accuracy in a notarized affidavit. This constitutes summary judgment evidence. The allegation that she and her husband had the above-referenced conversations with various Bank representatives are ones as to which Debra Pruitt would have personal knowledge.

Moreover, the affidavit that the Bank cites as evidence does not support its contention that the Bank's representatives did not make these representations to the Pruitts. The supporting affidavit only speaks to RCS's interactions with the Pruitts. It can thus only account for the period from the date that the Bank appointed RCS as the loan servicer and onward. Accordingly, the supporting affidavit specifically states that "[f]rom March 16, 2014, to the present, RCS has had no communication with [the Pruitts]" and that "[t]he Loan was not in the process of modification or loss mitigation at any time while RCS serviced the Loan." Dkt. 16-1 at Appx. 1. But one of the Bank's former loan servicers may have told the Pruitts that they did not need to make payments on the Loan before RCS was appointed in March 16, 2014 – for instance, some time before October 2013 when the Pruitts stopped making payments on the Loan.

For these reasons, summary judgment should be denied on this claim as brought by Debra Pruitt.

III.   <u>Summary judgment should be granted as to the fraud claim.</u>

The Pruitts also assert a claim for common law fraud. This claim also appears to be based on the allegation that the Bank instructed the Pruitts not to make payments on the Loan and that they would not foreclose on the home while loan modification negotiations were pending.

The Bank contends that this claim fails for two reasons. The Bank alleges that the summary judgment evidence "establish[es] that it has made no misrepresentation to [the Pruitts]." Dkt. No. 15 at 12. The Bank further alleges that "[the Pruitts] assert a claim for fraud, but failed to plead any facts which, if true, could support any of the elements of its claim." *Id.* at 11.

As discussed in more detail above, the undersigned is not persuaded by the Bank's argument that the undisputed evidence shows that it did not make the misrepresentations to the Pruitts. This allegation is contradicted by the Pruitts' verified complaint, *see* Dkt. No. 1-3 at 3-4, and the Bank's evidence only establishes that these conversations did not take place during the time in which RCS served as its loan servicer and not before then, *see* Dkt. 16-1 at Appx. 1.

But the undersigned agrees that the Pruitts' allegations are not sufficiently specific to state a claim for common law fraud.

As explained above, the Fifth Circuit has observed that, "in many cases, the failure to state a claim is the 'functional equivalent' of the failure to raise a genuine issue of material fact." *Whalen*, 954 F.2d at 1098. In these cases, when a "motion for summary judgment only challeng[es] the sufficiency of the plaintiff's pleadings," the

motion shall be granted "if, accepting all alleged facts as true, the plaintiffs' complaint nonetheless failed to state a claim." *Ashe*, 992 F.25 at 544.

This Court has recently found one instance in which an attack on the plaintiff's pleadings on summary judgment may not be treated as the "functional equivalent" of a failure to raise a genuine issue of material of fact. In *Jacked Up, LLC v. Sara Lee Corp.*, No. 3:11-cv-3296-L, 2015 WL 3513195, at *12-*13 (N.D. Tex. June 4, 2015), the Court suggests that the Rule 9(b) pleading standard may be relaxed when a Rule 9(b) attack on the pleadings is first raised in a motion for summary judgment. The Court's decision in *Jacked Up* suggests that a defendant should be estopped from holding the plaintiff to such an exacting standard when the defendant plainly had notice of the plaintiff's allegations yet did not challenge their sufficiency "until four years after the plaintiff filed its Original Complaint." *Id.* at *13. The Court reasoned that "Plaintiff would suffer prejudice if the court accepted this argument." *Id.* This is because "[t]he court cannot undo the discovery conducted and the materials presented to the court in the record" and "the time to amend pleadings has long passed." *Id.* at *12-*13. The Court thus concluded that, "[w]ithout reaching a decision as to whether Plaintiff satisfies the heightened pleading requirements of Rule 9(b), ... Plaintiff has stated a claim for fraudulent inducement to satisfy the requirements of Rule 12(b)(6)." *Id.* at *13; *see also Bartolowits v. Wells Fargo Bank, N.A.*, No. 3:13-cv-4666-D, 2016 WL 1436430, at *5 n. 7 (N.D. Tex. April 11, 2016) (stating in a footnote that, "[t]o the extent that Wells Fargo is relying on Fed. R. Civ. P. 9(b) to support its summary

judgment motion, it has waived its right to challenge the sufficiency of Bartolowits' common law fraud claim under Rule 9(b)").

Other cases in the Fifth Circuit appear to confirm that the Court should only relax the standard articulated in 9(b) in exceptional cases. Courts routinely find that an attack on the pleadings on a motion for summary judgment shall be ruled on as if the plaintiff filed a motion to dismiss even where the parties have presented evidence to support the claim. *See Charla G. Aldous, P.C. v. Darwin Nat'l Assur. Co.*, 92 F. Supp. 3d 555, 579 n.12 (N.D. Tex. 2015); *Moody Nat'l Realty v. Ozark Mgmt., Inc.*, No. 4:07-cv-3239, 2008 WL 8082760, at *6-*7 (S.D. Tex. April 22, 2008) (each finding that plaintiff's claim could be dismissed for failing to comply with Rule 9(b)'s heightened pleading standard on summary judgment); *see also KeyBank Nat'l Ass'n v. Perkins Rowe Associates, Inc.*, No. 09-497-JJB-SR, 2010 WL 4942206, at*3 (M.D. La. Nov. 30, 2010) (observing that a court could grant "a motion based on a lack of sufficient particularity under Rule 9(b) ..., whether or not coupled with a motion to dismiss" (internal quotation marks omitted)).

This is not an exceptional case. First, unlike *Jacked Up*, the Bank has not constructively waived its right to make a Rule 9(b) challenge by deciding to file this attack on the pleadings several years after collecting discovery that, in large part, necessarily depends on the relevance of Plaintiff's viable claims ("the Bank's decision"). Second, the Bank's decision has plainly not influenced this Court's decision on this claim. As discussed earlier, the Court ultimately found Defendant's proffered evidence disputed and unconvincing. Third, Defendant's decision has not prejudiced Plaintiffs

in this motion as to their other claims. Each of the Pruitts' other claims are at least partly based on the allegation supporting their claim for fraud – that is, that Bank representatives told the Pruitts not to make payments on the Loan and that the Bank would not foreclose on their home while loan modification negotiations were pending. The parties surely would have conducted discovery and presented evidence supporting these allegations in the same manner regardless of whether the Bank challenged the fraud claim earlier in the litigation. The undersigned therefore concludes that the Court should apply the Rule 9(b) standard to this case.

Rule 9(b) requires that, "[i]n alleging fraud…, a party must state with particularity the circumstances constituting fraud," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "[T]he plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). "[A]t a minimum," the pleading should identify "the who, what, when, where, and how of the alleged fraud." *U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010) (citations and internal quotation marks omitted).

The Pruitts allege that, at some point "during the term of the [L]oan," "they entered into debt restructuring negotiations with [the Bank]" whose "representatives informed Plaintiffs that they were not allowed to make any payments." Dkt. No. 1-3 at 2-3. The Bank's representatives allegedly also "informed [the Pruitts] they would not

take any action to foreclose on the Property" while awaiting confirmation of the loan modification request. *Id.* at 3.

These allegations are not sufficiently specific to satisfy Rule 9(b)'s requirements. The Pruitts do not allege when this conversation occurred with any precision. Nor do the Pruitts identify either the names or titles of the Bank representatives who had these conversations with them or where these conversations occurred. The claim should thus be dismissed on this basis. *See Sullivan*, 600 F.3d at 551 (dismissing fraud claims against Leor Energy where the plaintiff did "not allege who at the company made the statements or when or where they occurred").

The undersigned would reach the same conclusion even if these allegations were applied to the standard articulated by 12(b)(6). "To state a claim of fraud by misrepresentation under Texas law, a plaintiff must sufficiently allege (1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

Here, Plaintiff has failed to sufficiently plead that the speakers "knew" the alleged misrepresentations to be false or made them recklessly. Since Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," the sufficiency of these allegations do not turn on the applicability of Rule 9(b).

In *Balch v. JP Morgan Chase Bank, NA*, No. 3:14-cv-3666-M-BN, 2015 WL 1592386, at *4 (N.D. Tex. April 8, 2015), the Court concluded that the plaintiff "fail[ed] to allege a misstatement of fact or a promise made with no intent to perform." The Court reasoned that, although intent "may be inferred from the party's subsequent acts after the representation is made ... Plaintiff's allegation that Defendant broke the alleged promise, alone, cannot support the inference that Defendant made the promise with no intent to keep it." *Id.* (internal citations and quotation marks omitted).

The same is true here. The Pruitts allege that the Bank's representatives made certain promises to them that were ultimately broken. But they do not plead, even generally, that these representatives knew or should have known these statements to be false. The Court might have been able to infer intent or recklessness if, for instance, the Bank made these promises only to break them shortly thereafter. But the Pruitts do not even generally plead when these conversations occurred. At most, the Court can infer that the Bank made these representations before the Pruitts stopped making payments on the Loan.

Since the Pruitts have had notice that the Court could potentially find that its claim for fraud was inadequately pleaded and elected not to respond to this Motion for Summary Judgment or ask for a motion for leave to amend, providing Plaintiffs more time to decide whether to ask to re-plead would be futile and cause unnecessary delay.

This claim should thus be dismissed with prejudice.

IV.   <u>Summary judgment should be granted as to the claim for breach of duty to deal in good faith.</u>

Finally, the Bank argues that summary judgment should be granted with respect to the claim for breach of duty to deal in good faith. The Bank argues that the Pruitts cannot show that the Bank had any such duty.

In their State Court Petition, the Pruitts contend that the Bank has such a duty because "[e]very promissory note has an implied covenant of good faith and fair dealing by virtue of ... the Texas Uniform Commercial Code" (the "Texas UCC"). Dkt. No. 1-3 at 4. Section 1.304 of the Texas UCC provides that "good faith is required in the performance and enforcement of all agreements or duties." TEX. BUS. & COM. CODE § 1.304. But "the Texas UCC governs only transactions involving sale or lease of 'goods,' and homes are not a good." *Blakeley v. Boltinghouse*, No. Civ.A. H-03-4901, 2015 WL 1185944, at *4 (S.D. Tex. May 4, 2005) (quoting TEX. BUS. & COM. CODE § 2.315).

The parties' transaction is, instead, governed by traditional contract principles. Texas law does not recognize an implied duty of good faith and fair dealing in every contract. *See English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983). Instead, "Texas courts have carved out exceptions for certain 'special relationships,' such as those between insurers and insureds, principal[s] and agent[s], [and] joint venturers[] and partners." *Cole v. Hall*, 864 S.W.2d 563, 568 (Tex. App. 1993).

"The relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith," *Fed. Deposit Ins. Corp. V. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990) – at least where, as here, the duty purportedly derives solely from their contractual

relationship, *cf. McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) (finding that violations of the TDCA constitute a violation of independent duty because "[a] statutory offender will not be shielded from liability [under TDCA] simply by showing its violation also violated a contract").

But "[t]here are a few cases where courts have acknowledged that certain actions that show 'substantial, active participation' of the mortgagee might evidence a special relationship and give rise to a duty of good faith and fair dealing." *Balch v. JP Morgan Chase Bank, NA*, No. 3:14-cv-3666-M, 2015 WL 1592386, at *6 (N.D. Tex. April 8, 2015).

These cases suggest that a "special relationship"(and therefore a duty of good faith) might exist where the borrower has "a months-long back-and-forth conversation with [the lender's] employees" that involves "submitting financial documents and multiple applications at their request" and where he or she receives several assurances from the lender that the lender's modification request will be approved. *Omrazeti v. Aurora Bank FSB*, No. SA:12-cv-730-DAE, 2013 WL 3242520, at *15-*16 (W.D. Tex. June 25, 2014) (summarizing cases that have found a special relationship exists between a mortgagor and mortgagee, though also observing that *Milton v. U.S. Bank Nat'l Ass'n*, No. 4:10-cv-538, 2013 WL 264561, at *1 (5th Cir. 2013) – which affirmatively states that *"there is no special relationship* between mortgagor and mortgagee" – "casts doubt on the idea that even 'active participation' by a mortgagee can give rise to the requisite special relationship under Texas law" (emphasis in original)). In contrast, "a few scattered communications," even communications

-26-

mistakenly advising a lender that he had to be delinquent on his mortgage payments to qualify for a loan modification, would not give rise to a special relationship. *Omrazeti*, 2013 WL 3243520, at *14-*15.

The Pruitts have not presented sufficient facts to show that they had a "special relationship" with the Bank here. The Pruitts' claim appears to be based on their allegations that the Bank "add[ed] numerous exorbitant fees and charges" and "fail[ed] to give [the Pruitts] an accurate accounting," thereby "prevent[ing] [the Pruitts] from successfully modifying the loan." Dkt. No. 1-3 at 4. They also allege that the Bank's representatives instructed them to not make payments on the loan and that the Bank would not foreclose on them while a loss mitigation application was pending. *See id.* at 2-3.

In short, the parties' dispute concerns a few misstatements and instances of billing that are typical in lender-borrower relationships. The allegations do not appear to concern a lender's obligations to a borrower throughout a lengthy loan modification process in which the lender sought to foreclose on the property after the borrower submitted multiple applications based on the lender's repeated assurances that the application would be approved. *See Omrazeti*, 2013 WL 3242520, at *13-*14 (summarizing *Gomes v. Bank of Am., N.A.*, Civ. No. 12-0031, Dkt. No. 14 (D.Haw. July 24, 2012), where the court found that "that [BAC] went beyond its conventional role as a loan servicer" by providing the plaintiffs conflicting information in an eight month back-and-forth about the status of multiple loan modification applications).

Summary judgment should thus be granted with respect to this claim.

-27-

## Recommendation

The Bank's Motion for Summary Judgment [Dkt. No. 14] should be granted in part and denied in part, as follows:

·   The Motion for Summary Judgment as to Plaintiff Debra Pruitt's breach of contract claim should be denied.

·   On all other claims – specifically, Plaintiff Steve Pruitt's breach of contract claim and both Plaintiffs' claims for common law fraud and breach of duty to deal in good faith – the Bank's Motion for Summary Judgment should be granted, and the claims dismissed with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: November 30, 2016

                                           DAVID L. HORAN
                                           UNITED STATES MAGISTRATE JUDGE